Please be seated. Welcome. This is our second and final day for this sitting, and we have two cases. The first case is 21-608-30, Ducksworth v. Landrum. Mr. Robinson? Whenever you're ready. Please, the Court. My name is Brett Robinson. I'm here representing the four officers in this matter, Justin Landrum, Officer Josh Welch, Officer John Windsor, and Officer Clint Hedgepath. The fact scenario in this case, Your Honor, is very straightforward. In fact, it's all on videotape. So our officers were called to a business disturbance. They were called there. When they arrived at the car wash, the plaintiff was in a parking spot, vacuuming his vehicle. They talked to the business owner. The business owner said there had been a disturbance and that he could stay there as long as he continued to act like he was acting at that moment. Based on that information, the officers went over to investigate and to talk with the plaintiff. The plaintiff was immediately belligerent, was angry. The officers, based on their experience and training, determined that this situation was not going to be resolved peacefully, and they just couldn't leave. It wasn't reasonable for them to just leave and say, okay, she said you could stay if you act right, when they determined he was not going to act right. They told him to leave. What exactly did he say in that first interaction when four uniformed, armed police officers approached him and said, hop out of the truck? Help me understand exactly what he said. We've all seen the video multiple times. What did he say that you would characterize as belligerent? The tone of his voice, No. 1, Your Honor, was loud and just angry. But the first thing he said to him, one of the first things he said to him was, why are you all out here harassing me? Immediately on the defensive, they were going over there to tell him he could stay, as testified to by Josh Welch at the hearing on the charge. They were going to go over and tell him to stay as long as he continued to act like he was. He came out at them. It's interesting. I mean, he says, they say, hop out of the truck. He says, I'm just trying to vacuum the truck. And then the officer says, and this is my quote, correct me if I misunderstood, there's no transcript, so this is just from the audio of the video, well, get in your vehicle and leave and don't come back. You're banned from this place, end quote. So what authority did the officer have to say you're, quote, banned from this place or to say, quote, get in your vehicle and leave and don't come back? As far as the banning, Your Honor, he had not gotten that permission from the owner of the premises. Is there some provision of Mississippi state law that I don't know that authorizes a police officer to come onto private property, talk to an authorized agent of the property owner, receive instructions that the man's allowed to stay, but then just decide in the officer's discretion, in fact, not only are you not allowed to stay, not only do you have to leave now, but you are, quote, banned from this place? Yes, Your Honor. Actually, there's a statute 97-35-7 that says section one, whoever with intent to provoke a breach of the peace or under such circumstances as may lead to a breach of the peace, fails or refuses to promptly comply with or obey a request of a law enforcement offer, violates the law. So there's a bunch wrapped up in that. So one is, what command at the point that the officer says, get in your vehicle and leave and don't come back, you're banned from this place, what was the direction or command from the officer that the plaintiff had disregarded? At that point when he refused, Your Honor, that was the order he was refusing to comply with. But you realize now we have the statute backwards, right? He has to first refuse and then there's a breach of the peace. You're saying, in fact, the fact that the officer said you're banned and he refused to be banned is the breach of the peace? Am I understanding that correctly? No, Your Honor. That's the opposite of the statute you read. The statute says the one who breaches is or under such circumstances as may lead to a breach of the peace. Based on the officer's experience when they approached him, they'd already been called to a business disturbance, Your Honor. They didn't just ride up on this individual and start talking to him. They'd been called to a disturbance. A breach of the peace had already occurred to the point that they were caught. So when they arrived and walked up to this individual, he was in their determination belligerent, loud, and immediately was on the defensive, why are you harassing me? So at that point, based on their experience, they made a determination that this was either a continuation of a breach of the peace or this was headed to another breach of the peace, which under this statute gives them the authority to order him to leave. Let me ask it this way. If I watch the video and I either, I'd neither hear the word why are you harassing me or it seems that you're mischaracterizing his tone. Because what I heard was a man who says, look, I apologize to the lady. I'm trying to vacuum my truck. I paid for my service. I'd like to vacuum my truck. So if I disagree with you on that, is the case over? Have you lost? No, Your Honor, because it's the objectable reasonableness of their actions. And what I'm asking you is if I'm watching the video and I think he wasn't doing anything except vacuuming his truck, he said he apologized, he wanted to get his service, and that the police officer then said you're banned in direct contravention of what the woman, the agent of the property owner had said, is the case over? Have you lost? If we don't take into account his tone and his body language and his, what he actually said to the officers. Have you lost? The fact that he's black. Sir? The fact that he's a black man, it just hangs all over this case. I'm sorry. I'm a product of the South. If I'd have been a white man sitting in that truck, I think you would have been handled differently. I'm sorry, Your Honor. I've watched the video and what I read into that was that he said, why are you harassing me? And what strikes me is quite evident that, or at least the coloration for this, and I agree with all of my colleagues' observations about it, is that this happens to be officers harassing a black man. That's what it looks like on the video. I don't agree with that. You don't think Race had anything to do with this? Race did not have anything to do with it, Your Honor. They were, again, they were called to a business disturbance. I understand that. I understand that. But how they reacted to it, I would suggest to you that Race is a component of it. Common sense tells me that. And what I've seen in the video and the way they treated him, what they see as belligerent is a black man telling them something, what he wants to do. He would get it, and I don't, that's the anger that, as you read into it, I don't see it in the video. So why is it there? That's my candid reaction to the fact pattern. I won't tell you that until you disavow me of that. Yes, sir, Your Honor. I don't believe that Race was an issue in this matter. They were four white officers, Your Honor, but again, they were called to the scene. They had to investigate once it was there and in their determination. That's not the issue. That's what they did after they got there. The owner does not tell the police officer that these people had to leave. No, sir. She said as long as he continues to act like he was, then he could stay. They went over to investigate, and at that point, he came out belligerent in their determination, and they couldn't. It was not reasonable for them. The issue was what of their actions were objectively reasonable. It was not reasonable for those officers to then say, once they had contact with him, and he came out, and in their determination, he was still angry or at least irritated and belligerent to then for them to say, okay, we're just going to leave the scene and you can stay here. In fact, Officer Welch testified that's the main reason they told him to leave, just because they knew they were probably going to get called back if they did leave. The district court somewhat generously, maybe to your client, said, looking at the video, there's at least a fact issue as to whether the police use of force against him preceded him being combative, right? You remember that statement by the district court? Yes, sir. That the use of force by the officers preceded Mr. Duxworth becoming combative. You think that's just rebutted by the video? I don't think that's supported by the video at all. As they were standing there and he was being told to leave, and he was refusing to leave, Officer Landrum put his hand forward, but at that point, he flexed. You're not saying under Mississippi law that an officer can order a person off private property? If there is a situation, circumstances which may lead to a breach of the peace. Right, but the district court said there's a fact issue as to whether he was being breaching until after the police officers used force against him. But the circumstances which may lead to a breach of the peace, a breach of the peace did not have to occur. If they are in their determination to solve this heading into a situation where a breach of the peace would occur, they have to have... What were the charges that were brought against him? Failure to comply. So not breach of peace? Not breach of the peace, but that is the name of the statute. Disorderly conduct, refusal to comply with police request is 9735-7 of the Mississippi Code. And that's where the... I didn't understand in the brief where you explained, you tried to explain why the charge was as sort of limited as it was. In other words, you're acknowledging that Landrum didn't have the basis to say, as he did in the incident report and the affidavit, that this fellow was trespassing and the owner wanted him off. So you acknowledge that was inaccurate. Landrum did it at the trial, right? Yes, Your Honor. But so in the brief, you try to say why he charged him with failure to comply with the order to leave. With only one charge, yes, Your Honor. Explain that again. Why did he charge him inaccurately? Instead of charging him, all four officers charging him with different separate claims, they made the decision to charge him with one simple claim of the refusal to comply. Quite honestly, Your Honor, this individual's father is also a police officer. So part of that was not wanting to just pile charges onto this individual. They wanted to do a situation which had arisen and they just wanted to put that one charge on him at that time. And that's the reason Officer Landrum signed the one arrest affidavit, not to falsify evidence. That was instead of all four of them charging him, they made a decision. Officer Landrum was the senior officer on the scene at that day. He signed the affidavit, which included the information about the refusal to comply with the request. In Mississippi, to charge someone with resisting arrest presupposes there is a lawful arrest, correct? I'm sorry, Your Honor? In Mississippi, to charge someone with resisting arrest presupposes there is a lawful arrest. Yes, sir, Your Honor. But if they have good faith belief at the time that a crime has been committed or was committed, then there cannot be a false arrest, Your Honor. That's the Pearson case. To determine probable cause and have a lawful arrest, Your Honor, you have to look at the totality of the facts and circumstances. With the knowledge that the police officer had at that time, again, they were called to this business disturbance. They walked up to the individual. Their determination, he was belligerent, was not going to calm down. And once they told him to leave, which a reasonable officer would do in that situation, they didn't immediately grab him and wrestle him to the ground. They just said, you need to leave, diffuse the situation. The police officers have what's been described, at least in the one case in the Seventh Circuit, as a community caretaking function. This would fall under that. They need to take care of the community. They can't just wait for something to happen. If they see something about to happen, they can and should have the power to diffuse the situation, which is what they were trying to do. And as soon as they started telling him he had to leave, he became even more belligerent. One of the officers put his hand out toward him, and that's when he got physical and flexed and made it very apparent that it was going to be a physical issue if they approached him. So that's when he backed off and attempted to tase him and did not. But then he made the very dangerous move of trying to get into his vehicle. Those police officers didn't know what was in that car. They didn't know if he had a gun. At that point, they had the right to use force, which they did. And once they put their hands on him, they kept fighting. He kept resisting. And that was the point that Josh Welch merely tased him on the back of the leg, and he went down and the situation was resolved. That's not unreasonable force to tase someone who has refused to comply, tried to get in the vehicle to escape or get a weapon. At that point, the officers didn't know. And children screaming in the car is unmistakable, correct? They're crying because he's screaming in pain. There were children in the car, but at that point, the tussle was occurring. Do you, I want to see, you only have 30 seconds, but you do have rebuttal. Do you want to speak to Colvie Carson? Colvie Carson, the fabrication, do you want to address that at all or not? I would just say overall, the issue is whether any other officers would have acted differently or if no reasonable officer would have acted as these officers did, that is when qualified immunity does not apply. Thank you, Counsel. You have rebuttal time. Mr. Wade? Thank you, Your Honors. When we begin this case, first thing we look at is the whole reason the officers were there. First off, they had been called because there was a case of mistaken identity. The belief was that Mr. Duxworth's half-brother was the person who was there. They are similar in size and stature and looks. So when the officers arrived, yes, there had been a situation where the manager said he had acted like an ass, but that situation was resolved. Another coworker called and said they believed a Mr. Rogers was there who had warrants out for his arrest. The officers arrived. They talked to the manager who said he had been an ass, but he's fine now. As long as he does what he's doing, the officers continued to believe that they were about to arrest Mr. Rogers on those arrest warrants. As they approached the truck, they also made comments of, boy, that sure is a nice truck. I bet it's stolen or something along those lines as they approached the truck with Mr. Duxworth in it. They then realized this is not Mr. Rogers. This is not the individual who has the outstanding warrants. Of course, Your Honors have all seen the video, so you're well aware of everything that transpires after that. I think generally the fact that Judge Sterritt initiated his opinion about what the video shows and some of the questions Your Honors have already raised exemplifies why this is a jury question, because differing minds can watch the videos. The opposing counsel has a version of events based on the video, and at least a judge, the District Court Judge, Judge Sterritt, agrees that differing minds could watch the video and make it a fact issue. Was it objectively reasonable? As Your Honors have already touched on, there is no law in Mississippi that gives the police officers the authority. The statute that was quoted a few minutes ago, 9735-7, presupposes a lawful order is being refused. That is what underpins the entire argument here. Without the lawful order, they have no argument for the arrest. There's no failure to obey or breach of the peace unless they have issued a lawful order. During the underlying criminal prosecution, I asked the officers point blank if they had walked into a McDonald's and ordered someone to leave their table while they were eating a meal. Would that be a lawful order? And they all agreed, no, it would not. This situation, essentially, these officers created . . . How many body cams are there? I think there were others, but there was one that's been presented. I think a couple of the officers . . . And what orders, if any, are on that? The only order that was ever given was . . . Leave. Leave. He said, how would . . . I believe Mr. Duxford leans up against the truck and says, how would you gentlemen like to handle this? And they said, you need to get in your truck and leave and don't ever come back or you're banned from the property, something along those lines. That was the first order that was ever given to Mr. Duxford. And, of course, he protested that because he was on private property, he was told he was fine to stay, he paid for his services. He starts to go to the vacuum and that's when one of the officers pulls out a taser and then begins to escalate the situation. And from there, again, we've all seen the video, your honors have seen it, the first real defensive maneuver by Mr. Duxford was when one of the officers steps up to grab him to apparently try to place him under arrest without even telling him that he's under arrest. Of course, and Mr. Duxford even points out in the video, you know, with everything that was going on, the fact he'd been surrounded by four white officers, he was a lone black male with two small children in the back seat. He was simply speaking up and that was . . . I think that was after he's on the ground, he'd already lost control of his bodily functions at that point, he had defecated on himself because of being tased and you can hear the children screaming in the background. Mississippi also has a case that we cited too, which all officers should be aware of, which is Harold v. State. Harold v. State, which we quote in the brief, was very clear that if an officer does not get to claim breach of the peace or refusal to comply, simply because someone does not immediately obey the command. In Harold v. State, there was an individual in Starkville, Mississippi who had been walking a dog and the officers approached and asked for his ID, but they had no lawful basis to even request for the identification and Mississippi Supreme Court held, and I think they even touched on the fact in Harold v. State, that the charges that we have here in Harold v. State, Mississippi Supreme Court addresses the arbitrary use of the failure to obey charge often brought against people in Mississippi under similar circumstances. And one thing that we touch on a lot is that fortunately we live where we have a constitution. This isn't some authoritarian state where while it may be a best practice, I suppose, if an officer does command you to do something to follow that command, you're not required to follow every command. It must first be a lawful order of the police. And so since there was no lawful order given as the district court, and I've quoted several times in other cases, USV, and I'm sure I'll butcher the way it goes, but DRE, D-I-R-E-332-U-S-581, since there was no lawful arrest being made, Mr. Duxworth was entitled to at least put up some resistance to an unlawful arrest. So even the actions that begin after the officers first begin to grab him, try to pull him out of the truck, he has the right to resist an unlawful arrest at that point. And again, at that point, there still was no cause for a lawful arrest. In your honors, I think the other issue that I just wanted to touch on is, of course, the Colby-Carson. Counsel, I don't mean to interrupt, but just before we move off of the excessive force claim, we need to talk about the clearly established requirement for the qualified immunity analysis. And what is your position about where we look to find clearly established law that would put every reasonable officer on notice that their behavior here was unreasonable? Well, the law is clearly established on the excessive force component. It's been well established for quite some time. In this case, the law is also established that no use of force is reasonable unless there is a lawful arrest to be taking place. And what would be your citation for that proposition? I'm not disputing it. It seems obviously intuitive and easy to understand. I'm just curious, you know, our court and the Supreme Court have, we have lots and lots of decisions that talk about what sources of law we're supposed to look to, what levels of generality we're supposed to apply, what level of specificity the officer needs to understand the rule to be articulated to. And I'm just curious how you, how you would have us do this. Well, just to start with, Coon v. Ledbetter, 780 F. 2nd, 1158 was, I guess, the genesis in the Fifth Circuit, anyway, and quoted by the district court regarding the use of excessive force in making an arrest violates clearly established rights. So going all the way back to 1986, the use of force has been clearly established as being a violation of someone's constitutional rights. So there's two issues there. So let's try to take them and tease them out. I apologize in advance for the compound nature of this question. But one proposition is the Supreme Court has never told us. They were allowed to look to Fifth Circuit decisions to clearly establish the law. They've assumed it many, many times. And we've done it, I think, as a court of appeals on more than one occasion. But the Supreme Court has never said that we're allowed to do that. So there's one strand of relying on Ledbetter is, are we even allowed to look at Fifth Circuit cases? Because by looking at them, what we're saying is we just assume that police officers at every police force all across the Fifth Circuit are keeping abreast of our decisions, which is an assumption that may be a little bit difficult to stomach for some. So that's one strand of question. But the second is Ledbetter obviously doesn't involve a taser. And so the Supreme Court has said over and over again, you can't freeze the clearly established law requirement at a level of generality that is so broad as to say the Fourth Amendment prohibits unreasonable searches and seizures. This was an unreasonable search or seizure, therefore it violates clearly established law. You need to have something more granular that says, look, you're not allowed to tase a man who's not resisting arrest, or something that's slightly closer factually to the circumstances of our case. Your Honor, I don't have any of those cases cited in this brief. I have actually another brief in another court where we go into a little more in-depth regarding taser use, because that specific question wasn't actually raised in this specific case. But I do have some cases that I'd be happy to supplement via letter to the court as soon as I get back to the office. And in fact, there are several other circuits who have similar questions and discussions. And some circuits have different basis on it. Some have different reasoning on how they handle that situation. But in this situation, and I'd have to go back and look, I don't want to misspeak on what they say on the taser, but it's just like there are some cases that talk about billy clubs and guns and all those sorts of things. So I will go back and try to supplement, Your Honor, to give you something a little more on point. But regarding the excessive force aspect, what we're using here is, I mean, it's no different in grabbing someone or throwing them to the ground, that is what a taser does. In this case, it essentially paralyzed Mr. Duxworth, caused his bladder to lose bladder control and those sorts of things. So using the taser, the police officers knew they're trained on these things. They know that it will cause the body to seize. And there are some circumstances where tasers don't work, but that was not the situation in this case. But, Your Honor, I'll be happy to supplement that. And just moving on to, Your Honor, if you have any other questions on that before I go to Colby Carson. In Colby Carson, of course, that's where we deal with the fabrication of evidence. I think that generally what we have here is just an intent question. What was the officer's intent? It's clear that he filed a false affidavit. He had false information in his police report. He admitted that the information was not accurate on the stand. He had no choice to. There were body camera footage of what happened. The only way he has a case for arresting Mr. Duxworth is if that attendant had asked him to leave and he refused. So what was the intent behind his misstating perhaps the most key piece of the prosecution? Was it misstated in the incident report and the affidavit? It was in both. In fact, if it had just been in the incident report, perhaps then there might be an argument that it was just a careless error. But we have sworn testimony in the affidavit that he filed in which he stated under sworn testimony that the attendant... And you cross-examined Officer Landrum at trial? Yes, Your Honor. And he admitted that it was inaccurate? He did. And even though he had video that showed what actually happened, he stood by that affidavit up until we actually went to court. And that was ultimately intent as a question for the jury to decide why did he lie or misrepresent the key fact of the prosecution. But just to be clear, so under oath, he contradicted the incident report and the affidavit and said, oh, that was inaccurate? He did. He did. Once we got to, and this was initially, I'm trying to recall, this was initially with the municipal court and went up to the county court and the county court judge on the record is the one who found Mr. Duxworth not guilty of the charges that had been brought against him. And that's where the officer admitted that the information in both the report and his And again, I think it's very key that without that one fact, any of the other facts that he had misstated or misquoted would not be as big a deal. But the one linchpin in their case against him would have been if the attendant had told him to leave and he refused. And so for that reason, I think his intent is a question that a jury would have to ultimately decide. What was the intent behind him fabricating the one key piece of evidence in the case against him? And, Your Honor, that is all I have, unless Your Honors have any further questions for me. Thank you, Counsel. Thank you, Your Honor. Very quickly, Your Honor, the first comment would be to distinguish the Herald v. State case brought up by Mr. Wade. In that case, the police officer drove up to an individual who was out walking his dog and demanded identification. That's not what happened here. We have an incident. We have already had a, at least a misdemeanor crime had occurred, a breach of the peace had occurred to the point where they called the police officers. Police officers arrived, they investigate, the situation escalates due to the actions of the plaintiff, and then he's arrested for refusing to comply with their orders. So Herald v. State has no application. And again, Your Honor, they had the right. The right is not solely limited to a police officer giving orders to individuals to leave only on public property. The statute and the power of the police to diffuse the situation and to address circumstances which may lead to a breach of the peace are not limited to private property in the statute. They were invited onto the property by the owner. The owner said, a conditional permission. He can stay here as long as he continues to act like he's acting. They went over there. Their determination was he was not going to just stay there and vacuum his car. He was belligerent. He actually made physical motions when one of the officers approached him. At that point in time, that conditional permission was gone. I would even argue at that point he became a trespasser, because he is not acting as he was acting when she gave him permission. So that permission was withdrawn. At the very least, he was a trespasser and he failed to comply with the officer's request. As to Cole v. Carson, Your Honor, the issue with the affidavit is that it was signed by the senior officer who admitted that he did not give the order. But the other three officers did. And as I explained earlier, instead of each individual officer filing four different charges, the senior officer decided, in this situation, we're just going to charge him with one instance of refusal to comply and I'm going to sign the affidavit. That's the issue as to the affidavit. There's no intent to fabricate evidence. The police officers knew that the entire incident was on videotape. There was no need to fabricate evidence. He admitted on the stand that that one statement in his incident report was incorrect, but there was no evidence that was fabricated to bring false charges. The charge was refusal or failure to comply with the police request. It's not a false charge, it's on video. We've all seen it. He refused to comply with the police officer's request. There's no violation of Colby Carson and there's no violation of the plaintiff's rights. And all the actions as to the false arrest claim, the unreasonable force claim, and the false evidence claim are covered by qualified immunity. Their actions were objectively reasonable at the time that it occurred. It's not when we're standing in this courtroom or when we're at home, watch it on the video, and we can backward and forward and backward and forward and write out a transcript, that's not when it's determined. It's determined at that moment, in that instant. And those officers made that objectively reasonable determination that he needed to leave, he refused, he was gonna be physical. He instituted the force being used. When the officer reached out to him, he flexed, made a defensive posture, very strong and said, don't touch me. And instead of all four of them, quite honestly, Your Honor, jumping on him, one of them backed up, he was gonna comply or be tased. The taser didn't go and then it escalated from there due to the plaintiff's actions. The person who was physical and continued the struggle past just conversation was the plaintiff. No force was used until the plaintiff made a physical gesture when the officer approached him. That is objectively reasonable in their actions. At the time they arrested him, they had a reasonable determination that he had violated the law to refuse to comply with the request. Thank you, counsel. Case is submitted. Thank you, Your Honor. We appreciate it. We'll call the second case of the day, 21-306-4.